**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| FATEMA UDDIN,<br><br>                     Plaintiff,<br>v.<br><br>CHRISTOPHER J. GOODSON; GOODSON LAW OFFICE; FIVE STAR FUNDING, LLC; LUTFUR UDDIN; FARUK SIDDIQUE; JOHN CARUSO; PREAKNESS REAL ESTATE, LLC; A-1 ELEGANT TOURS; and SHELIM KHALIQUE,<br><br>                     Defendants. | **OPINION**<br><br>Civ. No. 2:15-cv-8025 (WHW) (CLW) |

<u>**Walls, Senior District Judge**</u>

      Plaintiff Fatema Uddin complains of an alleged scheme through which she was convinced by Defendants "to stop paying [her] mortgage under the stated reason that it was the only way for [her] to obtain a loan modification" and then to engage in an improper "short sale buyback scheme" through which she ultimately lost the deed to her family home. Compl., ECF No. 1 ¶¶ 1-5. Defendant Caruso moves to dismiss the complaint against him under the doctrine of *in pari delicto*. Decided under Fed. R. Civ. Pr. 78, the motion is denied.

**FACTUAL AND PROCEDURAL BACKGROUND**

      The following facts are drawn from the complaint, ECF No. 1, unless otherwise noted: Plaintiff, who is described by the complaint as being an "unsophisticated factory worker Bengali immigrant," became involved in a series of schemes through which she and her husband attempted to reduce the amount of principal and interest owed on their mortgage. *Id.* ¶ 1. These schemes began after Plaintiff experienced financial troubles in 2011 and was referred by a family friend, Defendant Faruk Siddique, to Defendant Lutfur Uddin for help. *Id.* ¶¶ 25-31.

1

**NOT FOR PUBLICATION**

Lutfur Uddin, acting as an agent of Defendant Christopher Goodson and Defendant Goodson Law Office, charged Plaintiff $15,000 to serve as a "loan modification mortgage specialist." *Id.* ¶¶ 2, 31. In exchange, he "guaranteed to obtain . . . for Mrs. Uddin . . . a significant principal reduction and low interest rate" and convinced her that she could obtain such a modification only "if she was in default and had a 'distressed property.'" *Id.* ¶¶ 33, 37. Plaintiff stopped paying her mortgage in April of 2012, and Wells Fargo, which held the mortgage as a successor in interest to World Savings Bank, filed a foreclosure action against her in October of that year. *Id.* ¶¶ 38, 48. Lutfur Uddin promised Plaintiff that he and Goodson Law Office attorneys would "handle everything" and "protect Mrs. Uddin's interests." *Id.* ¶ 51. No appearance was filed in the Wells foreclosure action, but the complaint was dismissed without prejudice on December 6, 2012. *Id.* ¶¶ 53-54.

In 2013, Lutfur Uddin informed Plaintiff that Wells Fargo had denied her application for a loan modification, although he did not provide her with documentation that any such application had been submitted. *Id.* ¶¶ 57, 59. He then advised Plaintiff that she "could still keep her property at a substantially reduced principal balance and monthly mortgage payment through a short sale with Wells." *Id.* ¶ 60.

Lutfur Uddin then arranged for Faruk Siddique to acquire Plaintiff's distressed property through a short sale, after which the Uddins would "reacquire their . . . home at a reduced price" from Siddique, who would "'hold it temporarily,' for a fee." *Id.* ¶¶ 61, 64. He advised Plaintiff that "after Mrs. Uddin's short sale closing her distressed property would be transferred back to Mrs. Uddin for the sum of $100,000." *Id.* ¶ 71. According to the complaint, the "Uddins, unsophisticated in real estate matters[ and] transactions, were unaware and had no reason to believe that Lutfur's version of a short sale was wholly illegal." *Id.* ¶ 73. Defendant Caruso

**NOT FOR PUBLICATION**

represented Plaintiff during the transaction, but they did not meet before her execution of the contract of sale. *Id.* ¶¶ 69-70. Plaintiff executed a deed transferring title for her property to Siddique on March 5, 2014. *Id.* ¶ 77.

Defendant Faruk Siddique was a straw buyer, and after the short sale he transferred title through a quit claim deed to Defendant Preakness Real Estate LLC on June 6, 2014, without informing Plaintiff. *Id.* ¶¶ 96-97. Defendant Goodson Law Offices "acted as the attorneys of record for both Faruk and Preakness in the quit claim deed transfer" without informing Plaintiff of the potential conflict of interest. *Id.* ¶¶ 103-106. Preakness Real Estate was wholly owned by Defendant Shelim Khalique, and the funding for these transactions was provided by Defendant A-1 Elegant Tours, a limousine and bus company that is also wholly owned by Khalique. *Id.* ¶¶ 111-113. These funds were transferred from A-1 to Goodson Law Office and then to Defendant Five Star Funding, a company wholly owned by Defendant Goodson. *Id.* ¶¶ 10, 120.

After this transaction was complete, Khalique informed Plaintiff that he would not convey the property back to her and announced his intention to evict her family from the home. *Id.* ¶¶ 101-103. Defendants Goodson and Goodson Law Office then filed multiple complaints for possession of the property in 2014 and 2015. *Id.* ¶ 110. As a result of this scheme, Plaintiff alleges that Defendants received "upfront fees, undisclosed disbursements, real estate commissions for both the purchase and sale of the Uddins' property [and] several hundred thousand dollars in the form of equity stripped from the Uddins' home." *Id.* ¶ 121.

Plaintiff brings a RICO claim under 18 U.S.C. § 1962(a) against Defendants Christopher Goodson, Lutfur Uddin, Shelim Khalique, and John Caruso. *Id.* ¶ 124. She also brings two RICO claims against these defendants, as well as Defendant Faruk Siddique, under 18 U.S.C. § 1962 (c) and (d). *Id.* ¶¶ 136, 143. She alleges violations of the Federal Real Estate Settlement

Procedures Act, 12 U.S.C. § 2601, et seq., against all Defendants. *Id.* ¶ 149. She alleges that Defendants Faruk, Lutfur, and Goodson violated the New Jersey Foreclosure Rescue Fraud Prevention Act, N.J.S.A. § 46:10B-53 et seq. *Id.* ¶ 158. She brings a fraud claim against Defendant Lutfur Uddin and requests that the Court void the respective deed conveyances. *Id.* ¶ 172. Plaintiff seeks damages totalling $370,940. *Id.* ¶ 177. She also moves under N.J.S.A. 2A:62-1 for a ruling "to determine Plaintiff's legal and equitable ownership of the subject property by way of a quiet-title action." *Id.* ¶¶ 180-193. Finally, she moves for the Court to issue a declaratory judgment voiding the deed conveyances that took place on March 5, 2014 and June 6, 2014, as well as a declaratory judgment that Defendants have no right or interest in the subject property. *Id.* ¶¶ 194-205.

Defendant John Caruso brings this motion to dismiss Plaintiff's claims against him, arguing that these claims "are barred by the doctrine of *in pari delicto* based upon Plaintiff's knowledge of and active participation in the purported fraudulent conveyances outlined in the Complaint." ECF No. 7-6 at 1. Relying on Fed. R. Civ. P. 15(a)(1)(A), Defendant Caruso filed a second, amended brief in support of his motion to dismiss on January 4, 2016, raising additional arguments. *See* ECF No. 12. Rule 15(a)(1)(A) permits a party to amend its *pleadings* but does not apply to a brief in support of a motion to dismiss. Courts will only consider a party's first motion to dismiss when that party has filed a second motion ostensibly under Rule 15(a)(1)(A) without first obtaining leave. *Bellocchio v. New Jersey Dep't. of Envtl. Prot.*, 16 F. Supp. 3d 367, 369 n. 2 (D.N.J. 2014); *see also* Fed. R. Civ. P. 12(g)(2) ("Except as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier

4

motion."). The Court will only consider the grounds raised by Caruso's original motion to dismiss.

This Court has subject matter jurisdiction over Plaintiff's federal law claims under 28 U.S.C. § 1331 and has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

## STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (internal quotations and alterations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—that the pleader is entitled to relief." *Id.* at 679.

In considering the plaintiff's claims, the Court may consider the allegations of the complaint, as well as documents attached to or specifically referenced in the complaint. *See Sentinel Trust Co. v. Universal Bonding Ins. Co.*, 316 F.3d 213, 216 (3d Cir. 2003); Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1357 at 299 (3d ed. 2014). "A 'document integral to or explicitly relied on in the complaint' may be considered 'without converting the motion [to dismiss] into one for summary judgment.'" *Mele v. Fed. Reserve Bank of N.Y.*, 359 F.3d 251, 256 n.5 (3d Cir. 2004) (citing *In re Burlington Coat Factory*

*Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)). "Plaintiffs cannot prevent a court from looking at the texts of the documents on which its claim is based by failing to attach or explicitly cite them." *Id.* at 255 n.5.

*In pari delicto* is an affirmative defense that can bar recovery where a plaintiff is "an active, voluntary participant in the unlawful activity that is the subject of the suit." *McAdam v. Dean Witter Reynolds, Inc.*, 896 F.2d 750, 757 (3d Cir. 1990) (emphasis removed). Although the defense is the "legal corollary of the equitable unclean hands doctrine," it differs from the unclean hands doctrine in that it applies only when "the degrees of fault are essentially indistinguishable or the plaintiff's responsibility is clearly greater." *Id.* at 756; *see also Stella v. Dean Witter Reynolds, Inc.*, 241 N.J. Super. 55, 73 (Sup. Ct. App. Div. 1990). "Foolish credulity is not equivalent to culpability for purposes of the *in pari delicto* defense, and neither is simple greed or a desire to make money." *McAdam*, 896 F.2d at 758 (internal citations omitted). As an affirmative defense, the doctrine of *in pari delicto* can be invoked on a motion to dismiss if it is clearly established by the complaint. *Cf. Official Comm. of Unsecured Creditors of Color Title v. Coopers & Lybrand, LLP*, 322 F.3d 147, 164 (2d Cir. 2003) ("[T]his Court has affirmed the dismissal of . . . claims on the pleadings upon findings that in pari delicto had been established in the complaints.").

## DISCUSSION

**1. Extraneous documents may not be considered by the Court on a motion to dismiss.**

Initially, the Court must determine what materials it may consider at this stage of the action. Plaintiff has attached several documents to her complaint, and Caruso has submitted other exhibits with his motion to dismiss. Attached to the complaint are (1) a ten thousand dollar check from Plaintiff's son to the Goodson Law Offices payable on October 7, 2012, ECF No. 1-1, (2)

**NOT FOR PUBLICATION**

the 2013 contract of sale between Faruk Siddique and Fatema Uddin concerning the Uddin's home, ECF No. 1-2, (3) the March 5, 2014 deed, prepared by John Caruso, that transferred ownership of the property from the Uddins to Faruk Siddique, ECF No. 1-3, (4) the "HUD-1" settlement statement signed by Fatema Uddin and Faruk Siddique, ECF No. 1-4, (5) the quitclaim deed signed by Faruk Siddique on June 7, 2014, ECF No. 1-5, and (6) a cashier's check from A1 Elegant Tours to Goodson Law Office, ECF No. 1-6. Attached to Caruso's motion to dismiss are (1) a letter from Wells Fargo Home Mortgage to Fatema Uddin approving a short sale of the property, ECF No. 7-4, (2) an affidavit concerning the short sale that was executed by Fatema Uddin on March 5, 2014, *id.*, (3) a certification executed by John Caruso, ECF No. 7-5, (4) an email concerning the property sent to John Caruso by a real estate associate for Prudential NJ Properties, *id.* Ex. A, a deed and a seller's residency certification prepared by Caruso, *id.* Ex. B, and a complaint and certification filed in a related state court action in the Superior Court of New Jersey, Passaic County, captioned *Uddin v. Uddin*, No. PAS-L-3713-14, *id.* Exs. C and D.

    For the purposes of this motion, the Court may consider each document attached to the complaint, but it may only consider the documents submitted by Caruso if it finds that they are matters of public record or are "integral to or explicitly relied on in the complaint." *Mele*, 359 F.3d at 256 n.5; *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1198 (3d Cir. 1993). If evidence submitted by a Defendant as part of a motion to dismiss falls outside of these categories, a district court has discretion to convert that motion to dismiss into a motion for summary judgment. *E.g. Kurdyla v. Pinkerton Sec.*, 197 F.R.D. 128, 131 (D.N.J. 2000). The Court first considers Caruso's submissions and whether to convert this motion into one for summary judgment.

### a. The Short Sale Documents

Counsel for Caruso has attached two documents related to the short sale that were not attached to the complaint. *See* ECF No. 7-4 Exs. B, C. She has certified that Exhibit B is "a true and accurate copy of January 31, 2014 correspondence from Wells Fargo Home Mortgage to Plaintiff Fatema Uddin" and that Exhibit C is "a true and accurate copy of the Short Sale Affidavit executed on March 5, 2014." O'Brien Cert., ECF No. 7-2. The correspondence from Wells Fargo notified Plaintiff that she had been approved for a short sale and contained conditions, stating that the "short sale must be an arm's length transaction . . . . This means the seller and buyer must be unrelated to each other by family, marriage or commercial enterprise." ECF No. 7-4 Ex. B at 2. In the short sale affidavit, the Uddins certified under penalty of perjury on the date of the closing that "[t]here are no agreements, understandings or contracts relating to the sale of the Mortgage Premises that have not been disclosed to the Lender" and "[n]one of the signatories have knowledge of any offer to purchase the Mortgages Premesis for a higher purchase price than our purchase price . . . that has not been presented to the Lender(s)." *Id.* Ex C.

Neither of these documents was attached to or specifically referenced by the complaint. The complaint does reference "the many documents [Plaintiff] executed at the short sale closing transaction." Compl. ¶ 79. Plaintiff has attached some of the short sale documents to her complaint, including the "contract for the sale of real estate" and the "HUD-1" settlement statement. ECF No. 1-2. But Exhibits B and C, which provided the terms under which the short sale would adjust Plaintiff's mortgage, are omitted from the complaint. A plaintiff "cannot prevent a court from looking at the texts of the documents on which its claim is based by failing to attach or explicitly cite them." *Mele* at 255 n.5; *see also Selective Way Ins. Co. v. Glasstech,*

**NOT FOR PUBLICATION**

*Inc.*, 2014 WL 6629629 at *3-*4 (D.N.J. Nov. 21, 2014) (considering documents submitted by defendant on a motion to dismiss that plaintiff "implicitly relied upon . . . in its [c]omplaint"). Here, several of Plaintiff's claims are based on the short sale transaction, she has referenced the documents that were a part of that transaction, and she has attached some, but not all, of these documents. The Court finds that the short sale notice and affidavit are "integral to" the complaint and may be considered "without converting the motion [to dismiss] into one for summary judgment." *Id.* at 256.

### b. Caruso's certification and its attachments

Defendant Caruso has also submitted his own certification. ECF No. 7-5. Attached to the certification are an email he received from a real estate agent discussing the short sale of Plaintiff's property, *id.* Ex. A, the deed that transferred title from Plaintiff to Defendant Siddique on March 5, 2014, including a "seller's residency certification" in which Plaintiff certified that she was living at a property other than the one subject to the short sale, *id.* Ex. B, a complaint filed by Plaintiff and her husband in the Superior Court of New Jersey for Passaic County on October 3, 2014 against Siddique, Khalique, Lutfur Uddin, and Preakness Real Estate, *id.* Ex. C, and an affidavit submitted by Plaintiff as part of her state court litigation, *id.* Ex. D.

For the reasons already discussed, the Court considers the deed between Plaintiff and Defendant Siddique because it was an integral part of the short sale transaction that forms the basis of Plaintiff's claims. The Court also considers Exhibits C and D, documents that have been filed as part of the state court action captioned *Uddin v. Uddin*, No. PAS-L-3713-14, as such documents are public records. *Pension Ben. Guar. Corp.*, 998 at 1198.

The Court does not consider Caruso's certification or his personal correspondence with real estate associate Lionor Carpenter. Such documents are not mentioned or attached to the

9

complaint, and they qualify for none of the exceptions under which a Court may consider extraneous documents without converting a motion to dismiss into a motion for summary judgment.

### c. The Court will not convert this motion into one for summary judgment.

Although a district court has discretion to convert a motion to dismiss into a motion for summary judgment, a "court should not convert a motion . . . when little or no discovery has occurred," *Kurdyla v. Pinkerton Sec.*, 197 F.R.D. 128, 131 (D.N.J. 2000), which is the case here. Additionally, Caruso's certification contains assertions that directly contradict those in the complaint. As example, Caruso certifies that he "spoke with Plaintiff and her husband at the short sale closing, and they communicated in English." Caruso Cert. ¶ 9. In contrast, the complaint asserts that "Plaintiff does not speak, read or write English." ECF No. 1 ¶ 7. These contradictions magnify the importance of discovery in this case, and the Court will not convert this motion into a motion for summary judgment before discovery has taken place.

### 2. Defendant has not established that he is entitled to relief on *In Pari Delicto* grounds.

Plaintiff does not deny the wrongfulness of the transaction that she took part in. The complaint acknowledges that "Lutfur's version of a short sale was wholly illegal." Compl. ¶ 73. The specific nature of the wrongfulness, although not detailed in the complaint, can be discerned from the documents submitted by Defendant Caruso. The lender agreed to a short sale for less than the value of the mortgage on the understanding that the sale was an arm's length transaction, and Plaintiff certified that there were no undisclosed agreements relating to the sale, that she had no knowledge of any offer to purchase the property for more than the short sale price, and that she was living at a different location. ECF No. &-2 Exs. B, C; ECF No. 7-5 Ex. C. In reality, Plaintiff short sold the property for $89,000 with the understanding that it "would be

**NOT FOR PUBLICATION**

transferred back to Mrs. Uddin for the sum of $100,000," and continued to reside in the property after the sale. *Id.* ¶¶ 71-72, 83, 102.

Although the wrongfulness of the short sale is clear, two relevant issues remain unclear at this stage. The first is Plaintiff's level of understanding and culpability. The short sale notice, affidavit, and deed are entirely in English. Plaintiff asserts that she "does not speak, read or write English" and that "Mr. Caruso failed to provide Plaintiff with an interpreter at the short sale closing." Compl. ¶¶ 7, 13. She claims that she was "directed to sign" documents that she did not understand and that she did not "know or understand . . . the law or rules governing loan modifications[ or] short sales for mortgage loans." *Id.* ¶¶ 80, 107. According to her, Defendant "Lutfur falsely and intentionally represented that the short sale buy back was a legitimate means of saving Mrs. Uddin'[s] home." *Id.* ¶ 132.

At this stage, the Court must credit all well-pleaded allegations in the complaint, including Plaintiff's allegations that she could not understand the documents she was directed to sign and that she was guided and misled by Lutfur. "Foolish credulity is not equivalent to culpability for purposes of the *in pari delicto* defense," *McAdam*, 896 F.2d at 758, and when the Court views the allegations in the complaint in the light most favorable to Plaintiff, it cannot rule at this stage that she acted with more than foolish credulity.

The second issue that remains unclear at this stage is Caruso's own level of culpability, which is relevant because, unless "the degrees of fault are essentially indistinguishable or the plaintiff's responsibility is clearly greater, the *in pari delicto* defense should not be allowed, and the plaintiff should be compensated." *McAdam*, 896 F.2d at 756. "[I]n cases where both parties are [at fault], concurring in an illegal act, it does not always follow that they stand in pari delicto;

11

for there may be, and often are, very different degrees in their guilt." *Id.* n. 9 (quoting *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 307 (1985)).

The complaint alleges that Caruso was a participant in Defendants' scheme and that "Mr. Caruso's purported representation of Mrs. Uddin was absent her consent, knowledge, [or] execution of a retainer agreement and without having met until the date of closing." Compl. ¶ 131. It further alleges that Caruso and the other Defendants "all knew that the short sale buy back was an illegal means of stripping equity from Mrs. Uddin's home and that it allowed Lutfur, Mr. Goodson, Shelim, and Faruk to evade taxes." *Id.* ¶ 134. Caruso disputes these allegations. Relying on his own certification, he states that he "was unaware of any agreement or understanding between Plaintiff and Siddique with respect to the Property and certainly was unaware of any agreement to deed back the Property." ECF No. 7-6 at 5. As discussed, at this procedural stage the Court is unable to consider Mr. Caruso's certification and must view the facts alleged in the complaint in the light most favorable to Plaintiff. Until the parties' comparative levels of culpability can be determined, the Court cannot dismiss the claims against Caruso on *in pari delicto* grounds. *See, e.g.*, *CHNJ Investors, LLC v. Koger*, 2013 WL 1192400 at *11 (D.N.J. Mar. 21, 2013) (declining to dismiss claims under *in pari delicto* where defendants' motion relied on documents that could not be considered on a motion to dismiss and the court was consequently unable to "determine that Plaintiff's alleged wrongdoing was equal to or exceeded the Defendants' alleged wrongdoing").

## CONCLUSION

At this procedural stage, the Court must credit Plaintiff's allegations that she was actively misled by Defendants and that she could not read or understand the documents that were given to her at the short sale closing. The Court is unable to consider Mr. Caruso's certification or

**NOT FOR PUBLICATION**

otherwise determine his own level of culpability. Because the Court cannot determine that "the degrees of fault are essentially indistinguishable or the plaintiff's responsibility is clearly greater," *McAdam*, 896 F.2d at 756, Defendant's motion must be denied. An appropriate order follows.

Date: 18 May, 2016

Hon. William H. Walls
United States Senior District Judge